USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/5/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
:
SING FOR SERVICE, LLC D/B/A MEPCO,           :
:
Plaintiff,           :
:
-against-           :           1:20-cv-5617-GHW
:
DOWC ADMINISTRATION SERVICES, LLC,      :           MEMORANDUM OPINION AND
:           ORDER
Defendant.           :
:
----------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.      INTRODUCTION

Everybody loves a winner.  And usually, it isn't that hard to tell who the victor is.  In sports, there are championships; in the arts, awards shows—at the end of the day, one person wins, the other person loses, and everybody goes home with certainty (if not satisfaction).

If only law were so easy.  After years of litigation, Plaintiff SING for Service, LLC d/b/a Mepco ("Mepco") and Defendant DOWC Administration Services, LLC's ("DOWC") still cannot answer the most fundamental of legal questions:  who won?  Mepco says it did, because the Court found in its favor on multiple issues earlier in the case, and because the parties entered a stipulation favorable to Mepco's position in the litigation.  But DOWC disagrees:  on its telling, because neither of those events changed the legal relationship of the parties, Mepco cannot be considered the prevailing party.  And because Mepco stands to recover significant fees if deemed the victor, declaring a winner is far from academic.

Called upon to referee, the Court concludes that because Mepco won the central disputed claims in this litigation, it is the prevailing party under the applicable law interpreting the parties' contract.  It is therefore entitled to reasonable attorneys' fees and costs, though the Court will

reduce them as detailed below.  In sum, Mepco's motion for attorney's fees is GRANTED IN PART.

## II.   BACKGROUND

This litigation began in July 2020.  At that time, Mepco—an LLC that provides funding to sellers and administrators of vehicle service contracts—filed a declaratory judgment action in this court against DOWC, an administrator of those vehicle service contracts.  Specifically, Mepco sought a determination that DOWC has no right under its "Administrator Agreement" with Mepco to cancel "payment plan agreements" between Mepco and third parties.  *See* Dkt. No. 1.  After years of litigation, the parties entered a stipulation, endorsed by the Court, adopting Mepco's view of DOWC's (lack of) cancelation rights under the Administrator Agreement.  Dkt. No. 134.  As a result, the only issues left in the case are whether Mepco is the "prevailing party" in the case and, if so, the amount of legal fees the Court should award to it.

The factual background of this case is presented more comprehensively in the Court's prior Memorandum and Order issued January 3, 2022.  *See SING for Service, LLC d/b/a Mepco v. DOWC Administration Services,* LLC, No. 20-cv-5617, 2022 WL 36478 (S.D.N.Y. Jan. 3, 2022).  A brief summary of the relevant history necessary to understand this decision follows.

### A.  Factual Background

DOWC administrates vehicle service contracts, which are contracts between DOWC and vehicle owners seeking extended warranties on their vehicles.  *Id.* at *2.  Through the vehicle service contracts, DOWC acts as the administrator of extended warranties sold by third-party sellers.  *Id.* When DOWC and a third-party seller issue an extended warranty, they may offer a payment plan service to the customer, though they "have complete discretion whether to offer payment plan services to their customers and," if they do so, "whether to rely on a third-party vendor for collecting monthly payments from customers."  *Id.* (internal quotation marks omitted).

In 2019, DOWC engaged Mepco to provide payment plan services for the vehicle services contracts though an "Administrator Agreement." *Id.* After that time, DOWC began to offer payment plan services through "payment plan agreements" entered into by Mepco and the purchaser. *Id.* at *3. Under the payment plan agreements, Mepco provides financing for the purchases of vehicle service contracts administered by DOWC. *Id.* at *2. In this role, Mepco essentially acts as a lender, paying a lump sum to both DOWC as warranty administrator and the relevant third-party seller for the vehicle service contracts it finances. *Id.* In return, the vehicle service contract purchaser pays regular installments to Mepco. *Id.* A payment plan agreement gives the *purchaser* the right to cancel it at any time and gives *Mepco* cancellation rights under certain circumstances. *Id.* at *3. But no language from the payment plan agreements allows *DOWC* "the right to terminate the agreement or to replace Mepco as a party to it." *Id.*

18W Holdings, Inc. d/b/a 1-800 Warranty ("18W") was one of the sellers of DOWC vehicle service contracts. *Id.* Mepco entered into a "Dealer Agreement" with 18W, under which "18W can offer installment payment plans to its purchasers, using the payment plan agreement forms provided to it by Mepco." *Id.* at *4. In the event a payment plan agreement was canceled, the Dealer Agreement required 18W to make a refund payment to Mepco. *Id.*

After Mepco purportedly provided subpar service under the Dealer Agreement with 18W, DOWC attempted to terminate unilaterally the payment plan agreements between Mepco and 18W. *Id.* at *8. DOWC acknowledged that the Administrator Agreement was "silent regarding DOWC's right to cancel Mepco's services in connection with existing Service Agreements." *Id.* (internal quotation marks omitted). But DOWC argued that cancellation rights were implicit in the Administrator Agreement, because DOWC had engaged Mepco as its agent to provide payment plan services. *Id.*

3

### B. Procedural History

After refusing to comply with DOWC's attempted termination of the payment plan agreements, *see id.*, Mepco commenced this action on July 21, 2020, seeking a declaratory judgment that DOWC did not have the right to unilaterally cancel the payment plan agreements. *See* Dkt. No. 1. Mepco also asserted that DOWC had tortiously interfered with the payment plan agreements "by procuring or soliciting purchasers to cancel their Payment Plan Agreements with Mepco and/or by billing those purchasers directly for amounts that were due to Mepco under the Payment Plan Agreements." *Id.* ¶ 45. It filed its first amended complaint two days later realleging both claims against DOWC; that complaint was active complaint through the remainder of the litigation. Dkt. No. 8 ("FAC").

On November 4, 2020, DOWC filed its answer and counterclaims against Mepco. Dkt. No. 29. DOWC's primary counterclaim was a mirror-image of Mepco's lead claim, seeking declaratory judgment that it *did* have the right to unilaterally terminate the payment plan agreements. *Id.* ¶¶ 78–85. DOWC's counterclaims also alleged that Mepco had breached the implied covenant of good faith and fair dealing, that Mepco had tortiously interfered with the vehicle service contracts, and that Mepco was unjustly enriched at DOWC's expense. *Id.* ¶¶ 86-101. On January 30, 2021, DOWC amended its counterclaims, reasserting all but its unjust enrichment claim against Mepco. Dkt. No. 48.

On March 2, 2021, Mepco filed a motion to dismiss DOWC's counterclaims under Federal Rule of Civil Procedure 12(b)(6), arguing that DOWC had failed to state a claim for relief. Dkt. No. 53 at 13–14. In a decision issued on January 3, 2022, the Court ruled for Mepco and dismissed DOWC's counterclaims. *See generally Mepco*, 2022 WL 36478. Regarding the request for declaratory judgment in DOWC's counterclaims, the Court held that "the Administrator Agreement does not provide DOWC the right to force Mepco to terminate the Payment Plan Agreements. Instead, in

4

the Administrator Agreement DOWC specifically disclaims any interest in the Payment Plan Agreements." *Id.* at *19.  It also dismissed with prejudice DOWC's claims that Mepco (a) had breached the implied covenant of good faith and fair dealing and (b) had tortiously interfered with the contract between the parties. *Id.* at *19–24.

On October 26, 2022, the parties jointly submitted a proposed stipulation and order.  Dkt. No. 130.  They agreed that DOWC "has no contractual right to cancel or terminate a payment plan agreement," and that when a payment plan agreement is cancelled, DOWC owes Mepco a refund pursuant to the terms of the Administrator Agreement. *Id.* ¶¶ 1–2.  After a joint request by the parties that it do so, the Court entered that stipulation as an order of the Court on October 31, 2022. *See* Dkt. No. 134.  The parties further stipulated that the only remaining issues to be decided were whether Mepco is the prevailing party and, if so, "the quantum of legal fees and costs that may be awarded to Mepco."  Dkt. No. 130 ¶¶ (a)–(b).

On November 21, 2022, Mepco moved for attorneys' fees and costs.  Dkt. No. 136 (motion); Dkt. No. 137 (accompanying memorandum, or "Pl's Mem.").  Mepco seeks $247,855.37 in attorneys' fees and $1,014.87 in costs.  Pl's Mem. at 2.  On December 20, 2022, DOWC filed its opposition to Mepco's motion.  Dkt. No. 138 ("Def's Opp.").  On December 30, 2022, Mepco filed a reply to DOWC's opposition.  Dkt. No. 139 ("Reply").  It also filed, upon the Court's request, supplemental declarations and documentation to support its fee request.  Dkt. No. 141; Dkt. No. 142.

## III.   DISCUSSION

Because Mepco succeeded on the central claim advanced in this litigation, it was the prevailing party, and the Court will award it reasonable attorneys' fees and costs.  But based on the Court's review of the relevant records, those costs will be reduced as detailed below.

### A.   Mepco is the Prevailing Party

Mepco is the prevailing party here and is accordingly entitled to collect costs incurred from this litigation.  The baseline "American Rule" proscribes fee-shifting between attorneys "unless a statute or contract provides otherwise."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013) (quoting *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 253 (2010)).  But here, the parties' Administrator Agreement contains just such a contractual provision altering the baseline rule.  That provision reads:

> *Prevailing Party Costs.*  The prevailing party in any litigation in connection with this Agreement shall be entitled to recover from the non-prevailing party all costs and expenses, including, without limitation, reasonable attorneys' fees and costs, incurred by such party in connection with any such litigation.

Pl's Mem. Ex. A § 8(e).

The parties' dispute stems not from any disagreement about whether this "Prevailing Party Costs" provision represents a contractual statement altering the American Rule—they agree that it does—but rather from how the provision should be interpreted here.

That disagreement begins with what law applies to interpret the provision.  The Administrator Agreement states that it "shall be construed in conformity with the laws of the state of New York."  Dkt. No. 137-1 § 8(a).  Mepco accordingly argues that New York contract law should be used to interpret it.  *See* Reply at 1.  DOWC, by contrast, asks the Court to rely on rules derived from federal civil rights statutes that contain prevailing-party provisions.  *See* Def's Opp. at 9.  The Court agrees with Mepco that New York contract law supplies the standard against which to measure what party has prevailed here because "[f]ederal courts apply state law when ruling on the interpretation of contractual attorney fee provisions."  *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999) (quoting *In re Sure-Snap Corp.*, 983 F.2d 1015, 1017 (11th Cir. 1993)); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005)

(Sotomayor, J.) ("We apply New York substantive law to resolve the dispute regarding plaintiff's entitlement to attorney's fees.").

Judge Naomi Buchwald considered this exact issue—and reached the same conclusion—in *Matsumura v. Benihana National Corp.*, No. 06-cv-7609, 2014 WL 1553638 (S.D.N.Y. Apr. 17, 2014). The Court finds her analysis convincing. As Judge Buchwald explained, because "any entitlement to attorneys' fees here arises exclusively from the language of the contract, and not from a statutory scheme . . . the precedent analyzing federal housing and civil rights statutes, upon which [Defendant] heavily rel[ies], is of little value here." *Id.* at *4. The "two strong equitable considerations" that apply in civil-rights statutes' fee-shifting provisions—that the plaintiff "'is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority,' and secondly, the fact that fees awarded to a prevailing plaintiff in the statutory context are awarded 'against a violator of federal law'"—do not control interpretive practice in contract cases like this one. *Id.* at *4 (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 419 (1978)); *see also Mid-Hudson*, 418 F.3d at 180 ("[T]he award of attorney's fees pursuant to a federal civil rights law . . . has little, if any, relevance to a dispute concerning a contractual indemnity provision governed by state law.").

Indeed, to confirm that the interpretive principles applicable to fee-shifting provisions in civil-rights statutes are largely cabined to that area of the law, one need look no further than the decisions establishing or invoking those principles. For instance, in *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782 (1989), the Court reversed a lower-court decision that had relied on the "central issue" test—a standard, as explained below, that is analogous to the one that will be used in this case—and instead articulated a test that relied on the "material alteration of the legal relationship of the parties *in a manner in which Congress sought to promote in the fee statute*." *Id.* at 788, 792–93 (emphasis added). And the Court further explained that it adopted the "material

7

alteration" test because of "congressional intent" regarding what fee awards should be available to "prevailing *civil rights* plaintiffs." *Id.* at 790–91.  Later cases have likewise limited rules for interpreting fee-shifting provisions in civil-rights statutes to cases of that type.  *See Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 149 n.5 (2d Cir. 2009) (noting that the "standards used to interpret the term prevailing party under any given fee-shifting statute are generally applicable in all cases *in which Congress has authorized an award of fees to a prevailing party*" (quotation mark omitted) (emphasis added).  So New York law, not federal civil-rights law, governs the interpretation of the parties' contract generally, and the fee-shifting provision of that contract in particular.[1]

"When interpreting a contract" under New York law generally, the Court's "primary objective . . . is to give effect to the intent of the parties as revealed by the language of their agreement."  *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113–14 (2d Cir. 2014) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)).  And New York courts have also articulated a more specific standard for interpreting prevailing-party contractual provisions:  "To be considered a 'prevailing party,' one must simply prevail on the central claims advanced, and receive substantial relief in consequence thereof."  *Sykes v. RFD Third Ave. I Assocs., LLC*, 833 N.Y.S. 2d 76, 77–78 (1st Dep't 2007); *see also Graham Ct. Owners Corp. v. Taylor*, 24 N.Y.3d 742, 752 (2015) (noting that "only a

---

[1] To respond to this authority, DOWC relies on two (over-twenty-year-old) district-court cases that stated that the same standard should apply in contractual fee-shifting provisions as applies to those provisions in civil-rights statutes.  *See MTX Commc'ns Corp v. LDDS/WorldCom, Inc.*, No. 95-cv-9569, 2001 WL 674142, at *1 (S.D.N.Y. June 15, 2001) (noting that the court "believe[d] that the standards governing who is a 'prevailing party' in the statutory context should not significantly differ in a contract case"); *Kuk Je Med. Corp., Ltd. v. Home Diagnostics, Inc.*, No. 92-cv-3308, 1994 WL 465844, at *3 (S.D.N.Y. Aug. 26, 1994) ("I see no reason why the same standard [used to interpret civil-rights fee-shifting provisions] should not apply to cases where the authority for granting reasonable attorneys fees and costs is contractual instead of statutory.").  But it does not appear that any alternate standard was presented to the courts in these cases, or that the courts considered what impact any other standard might have had on cases' outcomes.  And in any event, the cases' use of rules for civil-rights fee-shifting provisions to interpret contractual language, without looking to or applying the relevant body of contract law, stand against the weight of Supreme Court, Second Circuit, and other district authority on the issue.

prevailing party, who has achieved 'the central relief sought,' is entitled to attorneys' fees" (quoting *Nestor v. McDowell*, 81 N.Y.2d 410, 415–416 (1993)).

Whether that bar has been met depends on "the 'true scope' of the dispute litigated and what was achieved within that scope." *Sykes*, 833 N.Y.S.2d at 77 (quoting *Excelsior 57th Corp. v. Winters*, 641 N.Y.S.2d 675, 676 (1st Dep't 1996)). And here, because the central relief Mepco sought—declaratory judgment—does not have a direct monetary component, the Court must look beyond a simple accounting of damages recovered. *See Quik Park W. LLC v. Bridgewater Operating Corp.* 137 N.Y.S.3d 338 (1st Dep't 2020) (awarding attorneys' fees to the plaintiff notwithstanding "the fact that plaintiff[ ] recovered only nominal damages"). What matters, at bottom, is which party "successfully stymied the [other's] goals." *PaySys Int'l, Inc. v. Atos Se*, No. 14-cv-10105, 2017 WL 2930588, at *4 (S.D.N.Y. July 7, 2017) (citing *Excelsior 57th Corp.*, 641 N.Y.S.2d at 676), *vacated and remanded on other grounds sub nom. Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*, 901 F.3d 105 (2d Cir. 2018). And in a case where a party sues "to enforce the subject contract[ ]" and the court determines that the contract must be enforced in that party's favor, the suing party has prevailed. *Carousel Ctr. Co., LP v. Kaufmann's Carousel, Inc.*, 142 N.Y.S.3d 699, 701 (4th Dep't 2021).

Applying these rules to the disputed section of the parties' agreement, Mepco is the prevailing party here. As described above, the core issue in this case was whether or not DOWC had the right to terminate payment plan agreements that Mepco entered into with purchasers generally and 18W in particular. *See* Dkt. No. 8 at ¶¶ 36–41 (Plaintiff's lead claim, requesting that the Court "enter judgment declaring that DOWC has no right to cancel Mepco's Purchase Plan Agreements" and to declare that, if DOWC does so, it is entitled to refund Mepco); Dkt. No. 48 ¶¶ 78–84 (DOWC's first counterclaim, requesting that the Court "confirm that DOWC has standing and the right to cancel Mepco's payment plan services with respect to Service Contracts sold by 18W and administered by DOWC"). Mepco won on that issue decisively. In dismissing DOWC's

first counterclaim, the Court ruled that "the Administrator Agreement does not provide DOWC the right to force Mepco to terminate the Payment Plan Agreements. Instead, in the Administrator Agreement DOWC specifically disclaims any interest in the Payment Plan Agreements." *Id.* at *19. And at the parties' request, the Court "so ordered" the parties' stipulation that DOWC "has no contractual right to cancel or terminate a payment plan agreement," and that when a payment plan agreement is cancelled, DOWC owes Mepco a refund pursuant to the terms of the Administrator Agreement. Dkt. No. 130 ¶¶ 1–2. In short, there can be no doubt that Mepco "achieved the central relief sought" in this litigation and is accordingly entitled to prevailing party costs. *Graham Ct.*, 24 N.Y.3d at 752 (internal citation omitted).[2]

DOWC's response is largely nonresponsive because it relies on precedent interpreting fee-shifting provisions in civil rights statutes. *See, e.g.*, Def's Opp. at 9–10 (citing *Tex. State Teachers*, 489 U.S. at 791–93, *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019), and *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 16-cv-3907, 2018 WL 798873 (S.D.N.Y. Jan. 23, 2018), all of which involve fee-shifting provisions of civil rights statutes). But as discussed earlier, because this is a contract case governed by New York law, "the precedent analyzing federal housing and civil rights statutes, upon which [Defendant] heavily rel[ies], is of little value here." *Matsumura*, 2014 WL 1553638, at *4. Notably, and for this reason, DOWC does not argue that Mepco has not prevailed on the central claim in this litigation.

But even *if* the rules applicable to fee-shifting provisions of civil-rights statutes governed the interpretation of the parties' agreement (which they do not), Mepco would likely be the prevailing

---

[2] The Court also dismissed DOWC's two other counterclaims against Mepco: (1) that Mepco breached the implied covenant of good faith and fair dealing, and (2) that Mepco tortiously interfered with the vehicle service contracts DOWC administers. *Mepco*, 2022 WL 36478, at *19–23. And the parties later jointly stipulated to dismiss Mepco's tortious interference claim. *See* Dkt. No. 75. As a result, and as Mepco notes, Mepco "won every single disputed item in the litigation." Dkt. No. 139 at 3. These facts further confirm that Mepco was the prevailing party here.

party.  Under those statutes, "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Tex. State Teachers*, 489 U.S. at 792–93.  DOWC argues that, because the declaratory relief that Mepco achieved in the case—which did not involve an injunction—did not "change" the parties' "legal relationship," Mepco cannot be the prevailing party under this standard.  Def's Opp. at 10 (citing *Port Auth. Police Benevolent Ass'n*, 2018 WL 798873, at *3).  In particular, DOWC argues that because it never in fact canceled any payment plan agreements, but only "asked Mepco to do so," the Court's entry of the stipulation stating that DOWC had no right to cancel payment plan agreements cannot have altered the parties' legal relationship.  *Id.* at 12–13.

This argument, however, misconstrues the events that gave rise to this litigation.  DOWC was in the process of attempting to cancel payment plan agreements when Mepco sued to stop it:  as DOWC itself stated in its earlier counterclaim, DOWC "effectively terminated the underlying Payment Plan Agreements relating to Service Contracts sold by 18W and administered by DOWC," and "DOWC exercised its right to cancel Mepco's payment plan services with respect to service contracts sold by 18W."  Dkt. No. 48 at 10, 19.  And there is no indication that it ceased those attempts at any point before the Court's order in *Mepco*.  So that order—which adopted Mepco's view that DOWC could not cancel those agreements and otherwise dismissed DOWC's counterclaims—materially altered "the legal relationship of the parties," and likely would have made Plaintiff the prevailing party even under DOWC's preferred rule.  *Tex. State Teachers*, 489 U.S. at 792–93.[3]

---

[3] There are other alleged facts presented to the Court earlier in this litigation that could further support a finding that the parties' legal relationship was altered by this Court's order in *Mepco* and the subsequent entry of the parties' stipulation.  Specifically, in a March 7, 2022 conference, counsel for Plaintiff stated to the Court that "[t]here are over a thousand contracts involving DOWC and MEPCO."  Dkt. No. 98 at 8:5–6.  And in a July 7, 2022 conference, counsel for Plaintiff against asserted that "several hundred[ ] of those payment plan agreements [are] still in effect today."  Dkt. No. 123 at 27:8–10.  While counsel for DOWC disputed this proffer, *see id.* at 28:15–17, DOWC never conducted any discovery to disprove Plaintiff's allegations (indeed, DOWC never conducted any discovery at all).  *See* Dkt. No. 98 at 8:10–13.  In any event, the Court need not rely on these facts to conclude that Plaintiff is the prevailing party here.

In any event, the Court need not rely on its view of whether the parties' legal relationship was materially altered. As explained above, because this case is governed by New York law, the essential inquiry to determine whether a party prevailed is whether that party "achieved the central relief sought" in this litigation. *Graham Ct.*, 24 N.Y.3d at 752 (internal citation omitted). And for the reasons already provided, Mepco did. As a result, it is entitled to prevailing party costs as outlined in the parties' agreement.

### B. Mepco's Fee Award

Mepco originally requested $247,855.37 in attorneys' fees as the prevailing party here, and also seeks expenses in the amount of $1,014.87. Pl's Mem. at 14.[4] For the reasons provided below, however, while the Court will award Mepco $1,014.87 in expenses, it will reduce Mepco's fee award to $199,550.75, resulting in a total award of $200,565.62.

#### 1. Legal Standard

Because Mepco's entitlement to fees arises from a contractual provision in a contract subject to New York state law, New York rules governing the interpretation of attorneys' fees awards apply. *See Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) ("[I]n cases in which the right to attorneys' fees is governed by state law, New York's [rules] should apply."); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263–67 (2d Cir. 1987) (employing New York state-court rules to evaluate the reasonableness of an attorneys' fees award that arose out of a contract governed by New York law); *UMB Bank, Nat'l Assoc. v. Bluestone Coke, LLC*, No. 20-cv-2043, 2021 WL 3292519,

---

[4] In its Reply brief, Mepco voluntarily reduced its request to $234,529.87 based on what it identified as "twenty-two time entries" that contained references to this case and another matter. Reply at 10. But as described below, the Court calculates thirty-seven such entries. And the Court is unsure which twenty-two entries Mepco is referring to, as Mepco does not specify. Further, in its declaration supporting its requested fees, one of Plaintiff's counsel indicated that due to a missing entry and transposition error, the requested fees should have been $377.75 higher than the $247,855.37 number originally sought. Dkt. No. 141 Ex. A. But the Court will not award Plaintiff for this late-filed entry that was not a part of the original attorneys' fees calculations. *See* Dkt. No. 135 (setting a deadline in November 2022 for Plaintiff to file its motion for attorneys' fees); Dkt. No. 137 (Plaintiff's original motion, filed in November 2022, which did not include this additional $377.75); Dkt. No. 142 Ex. A (Plaintiff's supplemental briefing, filed in May 2023, adding the additional entry). In sum, the Court will start with Mepco's original request—$247,855.37—and reduce from there.

at *5 n.4 (S.D.N.Y. Aug. 2, 2021) ("[T]he Circuit has . . . made clear that [federal attorneys' fees] rule[s] do not apply in diversity cases where the right to a fee turns on state statutory or common law.").

To calculate the fee owed to the prevailing party based on a contractual fee-shifting provision, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear*, 810 F.2d at 1263. In New York state courts, a court's determination of the reasonableness of an attorneys' fees award uses a "multi-factor lodestar" method. *See McGrath v. Toys "R" Us, Inc.*, 3 N.Y.3d 421, 430 (2004). First, a court must determine whether the hours expended were reasonable and what the reasonable hourly rate of a comparable attorney would be. *See RMP Cap. Corp. v. Victory Jet, LLC*, 32 N.Y.S.3d 231, 236 (2d Dep't 2016) ("[T]he determination must be based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community."); *Lehman Com. Paper, Inc. v. Point Prop. Co.*, 45 N.Y.S.3d 662, 665–66 (3d Dep't 2017) ("[T]he court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." (quoting *Bankers Fed. Sav. Bank v. Off W. Broadway Devs.*, 638 N.Y.S.2d 72, 74 (1st Dep't 1996))); *see also Flores v. J&B Club House Tavern, Inc.*, No. 10-cv-4332, 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (noting that for the purpose of calculating reasonable hours, "[t]he critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures"). The reasonable hours and reasonable rates are then multiplied together to produce the lodestar estimate. *See McGrath*, 3 N.Y.3d at 430. "The attorney [seeking fees] bears the burden of establishing the reasonable value of the services rendered, based upon a showing of the hours reasonably expended and the prevailing hourly rate for similar legal work in the community." *Lancer Indem. Co. v. JKH Realty Grp.*, LLC, 8 N.Y.S.3d 356, 357 (2d Dep't 2015).

Second, the lodestar estimate may be modified (either upwards or downwards) by the Court using the following factors:

> (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved.

*Id.* at 357–58 (internal quotation omitted).  Finally, in New York, because "an award of attorneys' fees for the costs incurred in prosecuting a claim for an award of attorneys' fees, so called 'fees on fees,' must be based upon a specific contractual provision or statute," such an award may only be granted upon a finding that the relevant contractual provision evinces an "unmistakably clear intent regarding the recovery of fees on fees." *Matter of Lillian G.*, 174 N.Y.S.3d 451, 455 (2d Dep't 2022).[5]

"Hours which reflect duplication of services, or inefficiency, or are otherwise unnecessary, are to be disallowed." *Rehmey v. Blum*, 466 N.Y.S.2d 350, 357 (2d Dep't 1983).  Hours should also be "disallowed" if they are "inadequately documented." *Id.*  "If a Judge decides to eliminate hours of service adequately documented by the attorneys, he must identify those hours and articulate his reasons for their elimination." *Id.*; *see also Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (noting that the purpose of doing so is to "permit meaningful appellate review").

### 2.  Mepco's Expenses

Mepco seeks $1,014.87 in costs related to the case.  Pl's Mem. at 14.  The parties' agreement allows for recovery of such costs.  *See* Pl's Mem. Ex. A § 8(e) (allowing the prevailing party to

---

[5] It is true that New York courts abide the "general rule . . . that it is rarely proper to award fees in an amount that exceeds the amount involved in the litigation." *F.H. Krear & Co.*, 810 F.2d at 1263–64.  But courts depart from that baseline rule with some frequency. *See, e.g.*, *Vista Outdoor Inc. v. Reeves Family Tr.*, No., 2018 WL 3104631, at *5 (S.D.N.Y. May 24, 2018) (awarding more in fees than was sought in the litigation given that, in the court's view, "considerably more was at stake"); *Quik Park West*, 137 N.Y.S.3d at 339–340 (likewise awarding prevailing party fees in excess of the "nominal damages" recovered in the case).  And reasonability always remains the north star for calculating attorneys' fees. *Diamond D. Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14 (2d Cir. 1992) ("[The rule that fee awards should not exceed the amount involved in litigation] is only a rule of thumb, however.  It is a starting point in the process of ultimately determining whether a fee award is reasonable.").

"recover from the non-prevailing party all costs and expenses, including . . . reasonable attorneys' fees and costs"). And having evaluated the expenses sought, the Court believes them to be reasonable. *See* Dkt. No. 142 Ex. A (listing New York Southern District court fees, service of the complaint, and ordering a transcript as its fee costs). So the Court will award Mepco $1,014.87 in expenses.

### 3. Calculating Mepco's Fee Award

Plaintiff requested $247,855.37 in attorneys' fees. While DOWC argues that some of Mepco's time entries are vague, upon review, the Court finds that these entries—in the main—are for brief matters for which it would be unreasonable to expect voluminous detail; as a result, the Court will not reduce Mepco's fee based on these entries. However, based on reductions as a result of (a) double-counted expenses, (b) reasonable attorney rates, (c) block-billed entries, (d) unnecessary work performed to amend the complaint, (e) time billed to attorneys that should have been billed to legal assistants, and (f) eliminating fees that Mepco sought to recover for pursuing its fee award, the Court will reduce Mepco's attorneys' fees award to $199,550.75.

### i. Vague Entries

DOWC argues that numerous entries by Varnum and Walden that it says are vague. *See* Def's Opp. at 19–21. When there are "numerous inscrutable entries that mention 'communications regarding records and status' or 'review communications' . . . and 'team correspondence,'" it may be appropriate to reduce the fee award. *Houston v. Cotter*, 234 F. Supp. 3d 392, 409 (E.D.N.Y. 2017). And it is true that "internal conferences are harder to verify and therefore more likely to be excessive." *Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 271 (S.D.N.Y. 2000).

Having reviewed the time entries submitted by counsel, the Court agrees that there are some entries that could be accurately described as vague. Nonetheless, these entries overwhelmingly reflect short tasks for which it would be unreasonable to expect detailed time entries. As a result,

the Court does not find it appropriate to reduce Mepco's fees as a result of these entries.  *See Harold v. Harold*, 21 N.Y.S.3d 508, 510 ("The evaluation of what constitutes reasonable attorneys' fees is a matter within the sound discretion of the trial court." (internal bracket removed) (internal citation omitted)).

### ii.  Reduction for Double-Counting Expenses

While Mepco is entitled to reasonable expenses, it is not entitled to double-count them.  But it has done so, as it lists the $1,104.87 both as the amount it seeks in expenses, and also includes them as part of its billed attorney hours.  *See* Pl's Mem. at 14 (requesting $1,104.87 in expenses); Dkt. No. 142 Ex. A (listing expenses as line items in the attorneys' fees chart).  So the Court will reduce Mepco's overall attorneys' fee award by $1,104.87, from $247,855.37 to $246,750.50.

### iii.  Reasonable Rates Calculation

Mepco seeks an attorneys' fee award "based on the actual hourly rates it agreed to pay its counsel, Varnum LLP ("Varnum") and Walden Macht & Haran LLP ("Walden").  Pl's Mem. at 10.  The lawyers who billed time on this case are Ronald DeWaard, Brion B. Doyle, and Jeffrey Koelzer from Varnum, and Jeffrey A. Udell, Jeffrey Ding, Yuanzhou Wu, and Kristen Lasak from Walden.  Dkt. No. 141; Dkt. No. 142 Ex. B.

Ronald DeWaard and Brion B. Doyle are both partners at Varnum and have been practicing litigation for roughly twenty years.  Dkt. No. 141 ¶¶ 6–7.  They both have extensive litigation experience.  *Id.*  Jeffrey Koelzer has nine years of experience at Varnum, and became an income partner with the firm in 2021.  *Id.* ¶ 8.  Mr. DeWaard and Mr. Doyle each billed between $465 and $580 for their work on this case, while Mr. Koelzer billed between $365 and $415 for his time.  *Id.* ¶ 5.

Jeffrey A. Udell is a partner at Walden, and has a decades-long practice focused on, among other things, complex commercial litigation.  Dkt. No. 142; Dkt. No. 142 Ex. B.  Mr. Udell billed

$750 per hour on this case.  Dkt. No. 142 Ex. A.  Jeffrey Ding is a former Walden associate who had

six years of experience at the time that this case began in 2020.  Dkt. No. 142 Ex. B.  Mr. Ding billed

$540 per hour on this case.  Dkt. No. 142 Ex. A.  Yuanzhou Wu is a former Walden associate who

was admitted to the bar in 2019.  Dkt. No. 142 Ex. B.  She billed between $445 and $460 per hour

on this case.  Dkt. No. 142 Ex. A.  Kristen Lasek was a fourth-year associate when she joined this

Walden (and this case) in 2021.  Dkt. No. 142 Ex. B.  She billed $490 per hour on the case.  Dkt.

No. 142 Ex. A.

These rates for all of these attorneys are reasonable because they are all within the band for

hourly rates approved in this district for attorneys in complex commercial litigation in New York.

*See, e.g.*, *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987, 2022 WL 413229, at

*14 (S.D.N.Y. Feb. 9, 2022) (Woods, J.) (approving rates between $405 to $660 for associates and

between $712 to $910 for partners in a complex commercial litigation case); *Themis Cap. v. Democratic*

*Rep. of Congo*, No. 09-cv-1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) (observing that

"partner billing rates in excess of $1000 an hour[ ] are by now not uncommon in the context of

complex commercial litigation"); *Tessemae's LLC v. Atlantis Cap. LLC*, 18-cv-4902, 2019 WL

2635956, at *4 (S.D.N.Y. June 27, 2019) (collecting cases supporting reasonableness of "hourly rates

ranging from $250 to $1260 per hour[ ] for attorneys' work on a commercial litigation matter"); *LCS*

*Grp. L.L.C. v. Shire L.L.C.*, 383 F. Supp. 3d 274, 279–80 (S.D.N.Y. 2019) (awarding $868 per hour

for partners and $449.50 for an associate); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth*

*Kownacki LLC*, No. 16-cv-8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (accepting hourly

rates between $569.02 and $753.42 per hour for associates depending on seniority); *Errant Gene*

*Therapeutic, LLC v. Sloane-Kettering Inst. for Cancer Rsch.*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018)

(accepting partner hourly rate of $765); *Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16-cv-5766, 2018

WL 3104631, at *5–6 (S.D.N.Y. May 24, 2018) (approving rates up to $1,260 for partners).

Walden has also billed some hours to Alexis Rasquinha, Madeleine Smith, Robert Carpenter, and Zoe Olbrys, all at $250 per hour.  Dkt. No. 142 Ex. A.  Walden has not provided any information about these individuals, but the Court understands them to be legal assistants.  Absent any information about these individuals, the Court "concludes that the rates are excessive, and will reduce them to $150/hr., which is in line with prevailing rates for paralegals without specialized skills, training, or experience."  *Flatiron*, 2022 WL 413229, at *15.  This reduction reduces Mepco's overall fees award by $3,520.00, from $246,750.50 to $243,230.50.

### iv.  Block Billing

The Court will eliminate fees requested for entries that have been block-billed with another case.  "Block billing refers to a single time entry that includes a variety of distinct tasks."  *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04 CIV. 3600 (SWK), 2005 WL 3099592, at *5 (S.D.N.Y. Nov. 17, 2005).  "Block billing makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity."  *Id.*  Typically "[b]lock billing is 'not prohibited in this Circuit as long as the Court can determine the reasonableness of the work performed,' and 'billing descriptions that are fairly general, including terms such as 'case preparation' or 'meeting' may be sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed.'"  *Abdell v. City of New York*, No. 05-CV-8453 RJS, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (Sullivan, J.) (quoting *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09–cv–4602 (PGG), 2013 WL 6508813, at *11 (S.D.N.Y. Dec. 12, 2013)).

But block billing that involves both compensable and non-compensable matters poses a special difficulty to the Court's determination of reasonable hours.  *See Hnot v. Willis Grp. Holdings Ltd.*, No. 01cv6558, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) (noting that courts order

reductions for block-billing "where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate.").  The Court faces that difficulty here because—as Defendant notes and Plaintiff concedes—many of the entries billed by Varnum here include both (compensable) work on this case and (non-compensable) work on two separate cases involving the same parties.  *See 18W Holdings v. Sing for Service, et al.*, 20-cv-15007; *Sing for Service v. 18W Holdings,* 20-cv-4018; *see also* Def's Opp. at 17–20; Reply at 10 (Plaintiff stating that it was "willing to offer a reduction of its fee[s]" for entries that were billed to more than one matter).

Some courts have handled this issue in the way that Plaintiff requests—by reducing the rate for entries that are block-billed to both the case at bar and another case by half.  *See, e.g., Tag 380, LLC v. ComMet 380, Inc.*, 922 N.Y.S.2d 2, 2–3 (1st Dep't 2011) (endorsing as "reasonable" a lower court's use of this approach).  But the Court does not find this approach warranted here.  Ultimately, it is "[t]he attorney [seeking fees]" that "bears the burden of establishing the reasonable value of the services rendered, based upon a showing of the hours reasonably expended and the prevailing hourly rate for similar legal work in the community."  *Lancer Indem. Co.*, 8 N.Y.S.3d at 357.  And here, though the Court provided Plaintiff's counsel the opportunity to submit affidavits substantiating their fee requests, Varnum has failed to submit anything explaining what percentage of the work in the block-billed entries was for this case as opposed to the other cases billed in the same entry.  *See* Dkt. No. 141 ¶ 10 (Mr. Doyle merely stating that he "believe[s] that the hourly rates charged to Mepco are reasonable" without defending any specific entries).

As a result, the Court has no way of determining whether these entries are reasonable. "[L]acking affidavits to explain the methodology or to provide more detail regarding the [block-billed] records, the Court does not have enough information to conclude that the approach used by [Varnum] yields a reasonable estimate of the work performed on [this] matter[ ]."  *United States v.*

19

*Hastings*, No. 20-cr-534, 2022 WL 1785579, at *14 (S.D.N.Y. May 31, 2022) (Woods, J.); *see also*

*Lehman Com. Paper*, 45 N.Y.S.3d at 666 (it is the burden of the party seeking fees to provide the

Court with "sufficient information upon which to make an informed assessment of the reasonable

value of the legal services rendered").  Instead, the Court is "forced to guess at what whether the

amount requested represents a reasonable estimate of the amount expended—a guess, however, is

not proof."  *Hastings*, 2022 WL 1785579, at *14; *see also Lancer Indem. Co.*, 8 N.Y.S.3d at 357 (it is the

burden of the party seeking fees to justify their reasonableness).  So the Court will deduct entries

that it determines are block-billed.

Evaluating Varnum's spreadsheet submitted in support of its fee application, the Court

counts thirty-seven entries that either are block-billed in this fashion or that are so non-descriptive

that Varnum has not met its burden to show that the entry is connected to this case.  *See, e.g.*, Dkt.

No. 141 Ex. A at 2 (listing as an entry for July 7, 2020 "[p]repare for and attend phone conference

with clients to discuss 18W/DOWC/Auto Holding dispute; review correspondence received from

counsel for 18W in connection with same," clearly indicating that much of this time was for other

disputes); *id.* at 7 (billing time for "[r]eview[ing] 18W's initial disclosures," which clearly relates to

another case); *id.* at 15 (billing time for "[d]raft[ing] initial disclosures and attend to service and filing

of same . . . [and] [c]ommunication with local counsel to coordinate same" without specifying the

case for which this was happening).  A total of $30,631.00 was billed to these thirty-seven entries.

With these entries deducted, Plaintiff's fee award is reduced from $243,230.50 to $212,599.50.

### v.  Work Performed to Amend Mepco's Complaint

Plaintiff seeks attorneys' fees for 13.35 hours spent amending its complaint to meet the

jurisdictional pleading requirements for subject matter jurisdiction through diversity of citizenship of

the parties.  *See* Dkt. No. 6 (order to show cause as to why action should not be dismissed for lack

of subject matter jurisdiction), Dkt. No. 8 (amended complaint meeting the pleading requirements

for diversity jurisdiction).  But courts are instructed to exclude from the calculation of attorneys' fees hours not "reasonably expended on the litigation."  *RMP Cap. Corp.*, 32 N.Y.S.3d at 236.  These hours—expended by four separate attorneys with two law firms to meet a basic pleading requirement that should have been met in the first instance—are not reasonable.  So the Court excludes these hours from its calculation of attorneys' fees.  This reduces Plaintiff's fee by $5,166.00, from $212,599.50 to $207,433.50.

### vi.   Time Billed by Attorneys for Administrative Tasks

The Court further finds that a reduction in rates is warranted for tasks performed by attorneys that should have been performed by legal assistants.  Bearing in mind that the reasonable rate of an attorney is what rate a paying client would be willing to pay, where there is "work done by an attorney that is typically done by a paralegal," "courts reduce attorney's fees to a paralegal rate." *Perez v. County of Rensselaer*, No. 14-cv-950, 2021 WL 3022115, *2 n.3 (N.D.N.Y. July 16, 2021) (citing *Monette v. County of Nassau*, 2016 WL 4145798, at *8 (E.D.N.Y. Aug. 4, 2016)).

Here, the Court has identified five Walden entries for work performed by associates that should have been performed by legal assistants.  *See, e.g.*, Dkt. No. 142 Ex. A at 4 ("Review scheduling order and calendar events.").  For each of these entries, the Court has reduced the rate to the $150-per-hour rate identified earlier as the appropriate rate for such work.  Doing so results in a reduction of $1,134.00, which takes Mepco's fee award from $207,433.50 to $206,299.50.

### vii.   Time Spent Pursuing the Request for Attorneys' Fees

Finally, the Court will eliminate Mepco's request for time spent in pursuing its request for attorneys' fees.  While so-called "fees on fees" are often recoverable in federal litigation, they are not typically compensable under New York law for contractual fee-shifting provisions.  *See Matter of Lillian G.*, 174 N.Y.S.3d at 455 (noting that "so called 'fees on fees'" can only be based on "unmistakably clear intent regarding [their] recovery," and otherwise should be excluded).  The

parties' agreement here, which merely grants the prevailing party "all costs and expenses" including "reasonable attorneys' fees and costs," does not evince such an unmistakable intent to award fees on fees such that their inclusion in Mepco's award would be proper. *See* Pl's Mem. Ex. A § 8(e). As a result, the Court will exclude the 14.95 hours spent by Varnum preparing for the attorneys' fees motion, which reduces Mepco's request by $6,748.75 from $206,299.50 to $199,550.75.

### 4. Fee Award Summary

Mepco requested $247,855.37 in attorneys' fees and $1,014 in expenses. The Court will award $1,014.87 in expenses. However, it will reduce the fee award (a) by $1,104.87 for double-counting expenses, (b) by $3,520.00 for unreasonable rates of paralegals, (c) by $30,631.00 for improper block billing, (d) by $5,166.00 for unnecessary work performed to amend the complaint, (e) by $1,134.00 for work performed by associates that should have been performed by legal assistants, and (f) by $6,748.75 for attempting to recover costs for "fees-on-fees," which are not recoverable here. With those reductions, Mepco's overall fee award is reduced to $199,550.75. When Mepco's expenses are added, the total award is $200,565.62.

## IV.   CONCLUSION

Mepco's motion for attorney's fees is GRANTED IN PART. The Court finds that Mepco is the prevailing party in this proceeding because it prevailed on each issue litigated and received "substantial relief" considering the scope of what was litigated. As the prevailing party, Mepco is entitled to an award of $199,550.75 in attorneys' fees and $1,014.37 in costs. Mepco's total award is accordingly $200,565.62.

The Clerk of Court is directed to enter judgment for Mepco in the amount of $200,565.62,

to terminate the motion pending at Dkt. No. 136, and to close this case.

     SO ORDERED.

Dated:  May 5, 2023
New York, New York

                                            GREGORY H. WOODS
                                     United States District Judge